**PAULETTE L. STEWART**
Assistant U.S. Attorney
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, Montana 59626
Phone: (406) 457-5120
FAX:    (406) 457-5130
Email: paulette.stewart@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> RICK JOHN MORALES Jr., <br><br> Defendant. | CR 20-58-GF-BMM-02 <br><br><br> UNITED STATES' TRIAL BRIEF |

The United States of America, by and through its counsel, Paulette L. Stewart, Assistant United States Attorney for the District of Montana hereby submits the United States' trial brief.

1

## THE SUPERSEDING INDICTMENT AND ELEMENTS OF THE OFFENSES CHARGED

Count I of the Superseding Indictment states:

That on or about November 19, 2019, at Wolf Point, within Roosevelt County, in the State and District of Montana, and within the exterior boundaries of the Fort Peck Indian Reservation, being Indian Country, the defendants, HARRY B. AZURE and RICK JOHN MORALES, JR., Indian persons, intentionally assaulted John Doe, said assault resulting in serious bodily injury, and aided and abetted the same, in violation of 18 U.S.C. §§ 1153(a), 113(a)(6), and 2.

The elements of the offense are:

- **First**, the defendant is an Indian person;
- **Second**, the crime occurred on the Fort Peck Indian Reservation;
- **Third**, the defendant assaulted the victim, John Doe, by intentionally striking or wounding him; and
- **Fourth**, as a result, the victim suffered serious bodily injury.

"Serious bodily injury" means bodily injury that involves (1) a substantial risk of death; (2) extreme physical pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a body part, organ, or mental faculty.

Count II of the Superseding Indictment states:

That on or about November 19, 2019, at Wolf Point, within Roosevelt County, in the State and District of Montana, and within the exterior boundaries of the Fort Peck Indian Reservation, being Indian Country, the defendants, HARRY B. AZURE, and RICK JOHN MORALES, Jr., Indian persons, knowingly entered and remained unlawfully within the residence of John Doe, an occupied structure, with the purpose to commit the offense of assault therein, and aided and abetted the same, in violation of 18 U.S.C. §§ 1153(b) and 2, and Mont. Code Ann. § 45-6-204(1)(a).

The elements of the offense are:

- **First**, the defendant is an Indian person;

- **Second**, the crime occurred within the exterior boundaries of the Fort Peck Indian Reservation;

- **Third**, the defendant knowingly entered or remained unlawfully within an occupied structure; and,

- **Fourth**, the defendant did so with the purpose to commit an offense of assault therein.

"A person enters or remains unlawfully in or upon any . . . occupied structure . . . when the person is not licensed, invited, or otherwise privileged to do so. . . .   The privilege may be revoked at any time by personal communication of notice by the landowner or other authorized person to the entering person." Mont. Code Ann. § 45-6-201(1).

## ANTICIPATED PROOF

1. Rick John Morales Jr. is an enrolled member of the Assiniboine and Sioux Tribes of Fort Peck. Co-defendant Harry B. Azure is an enrolled member of the Assiniboine and Sioux Tribes of Fort Peck. The victim in this case is another Indian person who lives on the Fort Peck Indian Reservation and is identified as John Doe in the superseding indictment.

2. On the evening of November 19, 2019, at approximately 11:15 pm, John Doe called 911. Fort Peck Tribal Officer Doney responded to the call. When Officer Doney arrived at John Doe's residence he was able to observe that John Doe had a large cut on his head and that he needed medical assistance.

3. Officer Doney was able to question John Doe prior to John Doe being transported to the hospital. John Doe advised Officer Doney that prior to the attack, he was at his home which is located in Wolf Point, Montana

and within the exterior boundaries of the Fort Peck Indian Reservation, with his wife "minding their own business" when one to three individuals kicked the door in. John Doe was unable to give any information regarding who kicked the door in or why they would have done it. John Doe told Officer Doney that the individuals who kicked in his door had struck him multiple times in the head with what he described as a small baseball bat. The individuals then left the residence in a white minivan. He was unable to give any further information regarding the incident and did not identify his attackers at that time.

4. John Doe was initially treated at the hospital in Wolf Point but was flown to Billings where he was admitted into the ICU because of the severity of his head injury. John Doe suffered a large subdural hematoma, a subarachnoid hematoma, and an intracerebral hematoma. John Doe underwent a major life-saving brain surgery and has had continuing complications resulting from the injuries he sustained on the evening of November 19, 2019.

5. Medical staff identified John Doe's injury as a "severe traumatic brain injury." John Doe's severe traumatic brain injury satisfies all prongs of serious bodily injury: (1) a substantial risk of death; (2) extreme physical

pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a body part, organ, or mental faculty. Following the care John Doe initially received at the hospital in Billings, he resided at an advanced care facility in Laurel until late August 2020. Doe continues to suffer frequent headaches, needs a walker to get around, and has had multiple surgeries to insert and remove a portion of his skull.

6. On January 29, 2020, FBI Special Agent Harry Murphy interviewed John Doe in Laurel at the advanced care facility where Doe was residing. Before talking about the assault/attack, SA Murphy asked Doe a series of questions to ascertain his mental acuity. Based on John Doe's answers and his overall demeanor, Murphy concluded that Doe could provide accurate information about the assault.

7. John Doe explained to SA Murphy that his attackers "used a sledgehammer" on his exterior door in order to gain entry into his house. The men also used a 'spud bar' that John Doe had lying in the yard to try and pry the door open.

8. John Doe was able to identify his attackers as Harry Azure and Rick Morales, Jr. *aka Little Rick*.

9. John Doe explained to SA Murphy that in the days prior to the attack on November 19, 2019, an incident involving Morales had occurred. Morales had come to John Doe's house where Doe and a friend were outside working. Morales was crying and asking Doe for help. Morales told John Doe that Azure had been in a fight at Town Pump, and that he had tried to help Azure but he ended up punching a wall and badly hurting his hand. John Doe told Morales he could not help him and advised him to go to the hospital. Morales appeared highly intoxicated and became angry when Doe told him that he could not help him. Morales threatened to kill Doe and his friend and chased them briefly with a hammer. John Doe's friend sprayed Morales with bear spray. Morales left Doe's residence after being sprayed with the bear spray. Doe's friend called the police. Morales went to jail later that night. On the evening of the attack, after gaining entry to the home by breaking the door, Morales entered the home with Azure and was upset with John Doe. Morales claimed John Doe "set him up". Morales then said "It's my call, it's my show" and instructed Azure to strike Doe. Azure then struck Doe twice on the head with a small blue bat using a 'chopping' (6 to 12 o'clock) motion. Morales saw Azure hit Doe with the bat and said,

7

"That's enough." Morales then told Azure "let's go" and the two left Doe's residence. Doe said Azure struck him with the bat because Morales told him to do it. Doe estimated Morales and Azure were inside his residence for 20 minutes. Doe began bleeding from the head and dialed 911 for help.

There is a previously filed stipulation at Doc. 67, a trial stipulation filed at Doc. 80 and its attachments, Dr. Richardson's expert witness disclosure at Doc. 84; and PA Hansen's expert witness disclosure at Doc. 85.

Trial is set for October 25, 2021, in Great Falls.

## WITNESSES

The government anticipates calling approximately six to ten witnesses, including the victim, medical providers, and law enforcement. They may include:

1. John Doe; Wolf Point;

2. Ed Hodges, Wolf Point;

3. Paul Doney, formerly Fort Belknap Law Enforcement Services;

4. Shannon Gonzalez, Wolf Point;

5. Marlin "Dusty" Richardson, MD, Billings Clinic;

6. Amy Hansen, Physicians Assistant, Billings Clinic;

7. Steve Lowe, Special Agent, Federal Bureau of Investigation;

8

8. ??, Wolf Point;

9. Kiedra Big Leggins, Wolf Point; and

10. Harry Murphy III, Special Agent, Federal Bureau of Investigation.

## EXHIBITS

1. Azure Tribal enrollment record;

2. Morales Tribal enrollment record;

3. Federal Register of federally recognized tribes;

4. 911 call from John Doe on 11/19/2019 at 11:17 pm;

5. Wolf Point dispatch notes;

6. Photographs of Doe's house and injuries from November 19, 2019;

7. Photographs of Doe's injuries taken by FBI SA Steve Lowe; and

8. Stipulation by parties regarding jurisdictional elements.

## LEGAL ISSUES

**I.   Victim's Right Not to be Excluded from Any Public Court Proceeding.**

The Crimes Victims' Rights Act (CVRA), codified at 18 U.S.C. § 3771, defines a "crime victim" in relevant part as "a person directly and proximately harmed as a result of the commission of a Federal offense . . ." 18 U.S.C. § 3771(e).

9

The Act states that crime victims so defined have the following rights:

(1) The right to be reasonably protected from the accused.

(2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

*(3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.*

(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5) The reasonable right to confer with the attorney for the Government in the case.

(6) The right to full and timely restitution as provided by law.

(7) The right to proceedings free from unreasonable delay.

(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a)(1)-(8) (emphasis added).

In a Ninth Circuit case, the government brought a writ of mandamus to petition the Court to order the district court to permit the family members of the murder victims, including those who were going to testify, to observe the trial in its entirety pursuant to the CVRA. *In re Mikhel*, 453 F.3d 1137 (9th Cir. 2006). The Court found that the district court improperly excluded the victim/witnesses without making any determination that their testimony would be materially altered

by attending the trial. "A mere *possibility* that a victim-witness may alter his or her testimony as a result of hearing others testify is therefore insufficient to justify excluding him or her from trial. Rather, a district court must find by clear and convincing evidence that it is highly likely, not merely *possible*, that the victim-witness will alter his or her testimony." *Id.* at 1139 (emphasis in original).

The government anticipates calling the victim in the government's case-in-chief. It is unknown whether the victim intends to be present during the entire trial. As a crime victim, the witness has the right to be present during the entire proceeding. There is no evidence that the witness' testimony would be materially altered by being present. If witnesses are excluded, the government respectfully requests the Court not exclude the victim from any portion of the proceeding, should she wish to be present.

## II. Pending motion and notices.

At the time of this filing, there is a pending motion to dismiss for speedy trial violation.

## III. *Missouri v. Frye*, 132 S.Ct. 1399 (2012).

Although the defendant is proceeding to trial, the United States notes for the record that a motion for change of plea would have been more beneficial to the defendant than a conviction following trial. *See Missouri v. Frye*, 132 S. Ct. 1399

(2012). The government does not seek to involve the Court in the plea agreement process in violation of Rule 11, but respectfully requests that the Court make an inquiry to ensure the record is protected.

### IV. Fed. R. Crim. P. 29.

Federal Rule of Criminal Procedure 29 permits a court to enter a judgment of acquittal at the conclusion of the government's case-in-chief, or at the conclusion of all the evidence, if there is insufficient evidence to support a charge. Under Fed. R. Crim. P. 29(a), a court may enter such a judgment of acquittal prior to the entry of a jury verdict. The government is barred from appealing such a pre-jury verdict order of dismissal under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *United States v. Ogles*, 440 F.3d 1095, 1100-04 (9th Cir. 2006) (en banc). A court may also elect to enter a judgment of acquittal after the jury returns a guilty verdict, pursuant to Fed. R. Crim. 29(c). Such a judgment of acquittal may be appealed by the government without violating the Double Jeopardy Clause, since an appellate reversal would only involve reinstatement of the guilty verdict and would not require a new trial. *United States v. Brandon*, 633 F.3d 773, 779 (9th Cir. 1980).

**V. Prior Consistent Statement.**

A declarant-witness's prior statement is not hearsay if it "is consistent with the declarant's testimony and is offered . . . to rehabilitate the declarant's credibility when attacked on another ground." Fed. R. Evid. 801(d)(1)(B)(ii). Subpart (ii) of Rule 801(d)(1)(B) allows for "consistent statements that rebut other attacks on a witness—such as charges of inconsistency or faulty memory"—to be admitted as substantive evidence. See Fed. R. Evid. 801 Ad. Comm. Notes (2014 Amendments). A prior consistent statement must also satisfy the requirements of Fed. R. Evid. 403. *Id*.

In this case, the United States expects that defense may attempt to attack Doe's credibility on cross-examination. Depending on the nature of the cross-examination, Doe's prior consistent statements about the events of the assault made previously may be admissible to rehabilitate his credibility.

## ANTICIPATED TRIAL TIME

The United States anticipates that the trial time in this case will be two days from jury selection to jury deliberation.

/ / /

/ / /

/ / /

DATED this 18th day of October 2021.

LEIF M. JOHNSON
Acting United States Attorney

/s/ Paulette L. Stewart
PAULETTE L. STEWART
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

I hereby certify that the United States' Trial Brief complies with Local Rules. The brief's line spacing is double-spaced, the text is proportionately spaced with a 14-point font size, and the brief contains less than 6,500 words. (Total number of words: 2,398 excluding the caption and certificate.)

DATED this 18th day of October 2021.

/s/ Paulette L. Stewart
PAULETTE L. STEWART
Assistant U.S. Attorney
